IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| **PAUL KELLER** and **LORENZO HERRING**, individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**VENUS CONCEPT USA INC**,<br><br>**Defendant.** | CASE NO. 0:24-CV-60657<br><br>Magistrate Judge Panayotta D. Augustin-Birch |

**JOINT MOTION FOR APPROVAL OF
FLSA SETTLEMENT UNDER 29 U.S.C. § 216(b)**

Plaintiffs Paul Keller and Lorenzo Herring ("Plaintiffs"), on behalf of the opt-in Plaintiffs (collectively "Plaintiffs"), and Defendant, Venus Concept USA Inc. ("Defendant" or "Venus"), move for entry of an Order approving the settlement agreement between Plaintiffs and Defendant in this conditionally certified Fair Labor Standards Act ("FLSA") collective action. In support of their motion, the Parties state as follows:

**PROCEDURAL HISTORY**

Plaintiffs filed their Collective Action Complaint on April 22, 2024, alleging that the Defendant misclassified the Field Service Engineer position ("FSE" or "FSEs") as exempt under the Fair Labor Standards Act ("FLSA") and, for those FSEs who were either based in California or who performed work in California, under California state laws.

Soon after filing, Judge Leibowitz referred the case for a settlement conference. The parties agreed that a settlement conference would only be productive after FLSA notice went out to all putative class members giving them an opportunity to join the lawsuit. The parties then

stipulated to conditional certification and notice was sent. Following the close of the notice period, the collective consists of 14 current and former FSEs.[1]

No formal discovery occurred in this case, but in anticipation of the settlement conference, Defendants produced mileage and expense documents for each of the plaintiffs and a spreadsheet it created with job assignments and locations. A settlement conference was held before this Court on October 17, 2024, during which the Parties engaged in settlement negotiations, but ultimately reached an impasse. However, the Parties continued negotiations following the settlement conference and reached a settlement, which has been memorialized in a Memorandum of Understanding signed by counsel on December 30, 2024. The Parties then filed a Consent to Proceed Before a United States Magistrate Judge on December 30, 2024 and on January 14, 2025, the case was referred to this Court.

Plaintiffs negotiated this settlement on behalf of the opt-in Plaintiffs pursuant to the express grant of authority that each Opt-in Plaintiff provided during and as a result of the Notice process. The Court-approved Notice (ECF 32-1, approved by the Court in ECF 33) informed the putative opt-ins that by submitting a signed Consent for filing in this action, they were agreeing to be represented by named Plaintiffs as their representatives and by Plaintiffs' counsel as their attorneys, and would therefore be bound by the named Plaintiffs' decisions made on their behalf (including settlement) and any result whether favorable or unfavorable. *Id.* The Consent form that each of the Opt-in Plaintiffs signed in this case also conferred representative authority on the named Plaintiffs to negotiate settlement on behalf of the Opt-in Plaintiffs.

---

[1] 14 of the possible 27 putative collective members joined the case, resulting in an especially high opt-in participation rate of 52%.

## SUMMARY OF THE SETTLEMENT

The Settlement Agreement, attached as Exhibit 2, involves the settlement of collective opt-in FLSA and, for any Plaintiff based in or who worked in California, California state wage law claims. Under the settlement, Defendant agreed to a collective, non-reversionary settlement under which Defendant agrees to a settlement payment in exchange for a release limited in scope to FLSA and state law wage claims pled or that could have been pled for Plaintiffs' weeks worked as salary-paid FSEs for which they were paid as exempt. Defendant also provides Plaintiffs a release limited to any claims it may have against Plaintiffs arising out of their participation in this case or the settlement, and waived any recoupment or offset type claims against them. In addition to (not by deduction from) the Settlement Amount, Defendant agreed to pay the employer's share of payroll taxes owed on the wages portion of the settlement payments, further increasing the settlement's monetary value beyond the figures stated in the Settlement Agreement.

The Settlement Agreement will be paid in three equal installments, with the first payment to be paid within ten (10) days following an Order approving the settlement, and the two additional payments to be paid three and six months thereafter, respectively. As described in the Settlement Agreement, if Defendant fails to timely comply in full with the payment plan without curing default after required notice and a Consent Judgment is then entered, the Consent Judgment amount will be allocated and paid in those same pro rata percentages, and Plaintiffs would be entitled to recover enforcement-related attorney's fees and costs.

The settlement, if approved as submitted, provides all participants with recovery from two settlement funds: (i) a FLSA Collective Fund, representing 78% of the net sum value of the settlement, determined by the ratio of maximum FLSA damages to total maximum FLSA

3

damages plus additional California-only damages, to be paid to the Plaintiffs allocated on a pro rata basis according to each Plaintiff's total weeks worked as a FSE paid as salaried exempt within the maximum applicable FLSA limitations period on their individual claims during the covered weeks; and (ii) a California Collective Fund, representing the remaining 22% of the net sum value of the settlement, for California-only additional damages, penalties and interest for weeks worked in California as a FSE paid as salaried exempt, and waiting time penalties for California-based Plaintiffs, to be paid to the Plaintiffs allocated on a pro rata basis according to each Plaintiff's total weeks worked in California as a FSE paid as salaried exempt.

One-half[2] of the total FLSA fund and 66.66%[3] of the California Collective Fund payments will be paid and reported by Defendant as non-wage liquidated damages/penalties paid to Plaintiffs without withholdings, and 50% of the total FLSA Fund and 33.34% of the California Collective Fund constitutes payment for settlement of their wage claims reported by IRS Form W-2 (and therefore are subject to standard deductions and withholdings).

The settlement allocation provides for a payment to each of the two named Plaintiffs, in addition to their *pro rata* share of the settlement, in exchange for providing a general release of claims, contingent on Court approval.

Defendant agreed to pay, Plaintiff's counsel agreed to accept, and the Parties agreed to allocate in the Settlement Agreement, one-third of the total settlement amount as payment for

---

[2] Plaintiffs' FLSA claims allege damages of unpaid overtime wages, plus an equivalent amount as non-wage liquidated damages.

[3] Plaintiffs' claimed California-only additional amounts include double time pay for hours worked over 12 in a day or on a 6th day in a workweek, penalties for willful non-payment, penalties for failure to provide accurate wage statements, penalties for failure to provide meal and rest breaks, and, for California-based employees, waiting time penalties for those FSEs who have terminated their employment – the non-wage amounts of which exceed 2/3rds of the California-only totals.

Plaintiffs' attorney's fees, and an additional amount to be determined as reimbursement to Plaintiffs' counsel for advanced litigation costs and expenses.

Finally, the Settlement Agreement provides for entry of stipulated dismissal of the Lawsuit and the retention of jurisdiction over any disputes or enforcement that may arise under the Settlement Agreement, such that the Court may entertain further proceedings, enter orders, and issue such writs, including entry of the Parties' negotiated Consent Judgment, as the Court may deem necessary or advisable.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. The Settlement Satisfies All Of The *Leverso* Factors

The Parties' settlement satisfies all of the *Leverso* factors for fairness of an FLSA settlement. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).

1. There Is No Fraud Or Collusion Behind The Settlement And The Agreement Reflects The Complexity, Expense, And Likely Duration Of The Litigation.

The circumstances present in the instant action justify the Court's approval of the Parties' settlement to resolve and release Plaintiffs' FLSA and individual California wage claims against Defendant, including, but not limited to, (1) Defendant's contention that Plaintiffs were properly classified as exempt employees and paid appropriately; (2) the Parties' dispute over whether Plaintiffs' travel time was compensable, whether that travel time resulted in working more than forty (40) hours in a week, and if so, how often did the Plaintiffs work overtime; (3) the Parties' dispute regarding whether damages should be calculated at the time and one-half rate or the half-time rate; and (4) the Parties' dispute as to whether Plaintiffs' claims would survive a decertification motion under the FLSA based on Defendant's belief that Plaintiffs' exempt status and any potential damages are not ascertainable without an individualized inquiry regarding every individual collective member. Therefore, there is a *bona fide* dispute between the Parties,

and the settlement should be approved as reasonable in light of the real risk of non-recovery if Defendant prevailed on its absolute exemption defenses to liability at trial. *See, e.g., Brenowitz v. Implant Seminars, Inc.*, No. 17-20184-CIV-GOODMAN, 2017 U.S. Dist. LEXIS 126959, at *9 (S.D. Fla. Aug. 10, 2017).

Nonetheless, the Parties have considered the relative strengths and weaknesses of their claims and defenses, the uncertainties and risks inherent in continued litigation, and the benefits of settlement. Accordingly, the Parties participated in a mediation with this Court on October 17, 2024, and continued those negotiations through completion. It is therefore submitted that the proposed settlement was not the product of collusion and that the facts and legal issues involved are sufficiently complex and disputed such that resolution at this stage is in the interest of all Parties.

This litigation would necessarily involve substantial time and expense given the voluminous written discovery, calculations, depositions, and motions practice required to continue litigation. To continue through trial would expose the Parties to substantial risk. The proposed settlement, however, provides prompt relief to Plaintiffs while conserving valuable judicial and litigant resources. Plaintiffs' work (and Plaintiff's counsel's expertise) allowed for an early resolution prior to extensive discovery, providing additional value to the collective. *See, e.g., Corcho v. Accredited Home Health Care of Broward, Inc.*, No. 0:24-CV-60529, 2024 U.S. Dist. LEXIS 107112, at *3 (S.D. Fla. June 17, 2024).

2. <u>Settlement of Plaintiffs' Claims Is Appropriate At This Stage of Litigation.</u>

This settlement comes after the case was conditionally certified and notice was sent to all putative opt-in plaintiffs. Although no formal discovery has taken place, this case was settled after the informal exchange of time and pay records, expensive reimbursement and mileage

records, and a spreadsheet prepared by Defendant of what it claimed was all of the assignments assigned to Plaintiffs during the relevant time period and the location of those assignments. Defendant produced to Plaintiffs much of the information and records that they would have obtained in formal discovery. The Parties then engaged in settlement negotiations, including attending a mediation session, before finally reaching a mutual agreement.

3. The Probability Of Plaintiffs' Success On The Merits Is Disputed.

As previously stated, the parties disagree regarding: (1) whether Plaintiffs were properly classified as exempt employees and paid appropriately; (2) whether Plaintiffs' travel time was compensable, whether that travel time resulted in working more than forty (40) hours in a week, and if so, how often Plaintiffs worked overtime; and (3) whether damages should be calculated at the time and one-half rate or the half-time rate. Plaintiffs believe the probability of success is high on the asserted wage claims and on the method and manner of calculating damages. Defendants strenuously dispute Plaintiffs' probability of success on both the wage claims and the method and manner of calculating damages. However, the Parties agree that the full value of the wage claims and costs of continued litigation render this case appropriate for resolution at this stage, prior to substantial expenditure of resources in lengthy discovery and motion practice.

4. The Range Of Possible Recovery.

The range of possible recovery in this case is difficult to ascertain with mathematical precision because there are no specific records tracking the hours Plaintiffs worked and/or traveled during what Plaintiffs contend to be compensable travel time. However, the Parties ultimately compromised and agreed to negotiate potential damages based on the presumption that Plaintiffs worked overtime 40% of their weeks, and when they worked overtime, they worked an average of eight (8) hours of overtime. Based on those presumptions, the FLSA

damages range from a total of $35,393.47 for the unliquidated two year statute of limitations period using the half-time overtime rate calculation (Defendant's preferred calculation) to a total of $367,014.26 for the three year statute of limitations period using the time and one-half overtime rate calculation with 100% liquidated damages (Plaintiffs' preferred calculation). California damages for overtime based on working more than eight (8) hours in a day and for various derivative penalties and interests account for additional damages separate and apart from those FLSA damages for any Plaintiffs who were based in California or for weeks where they worked in California. Based on that range, the gross settlement amount represents a middle ground between those two extremes.

As further evidence of the reasonableness of this settlement and the absence of any collusion, this is not a settlement where Plaintiffs agreed to bind collective action members to a global release of all claims of any kind in exchange for payment. Quite to the contrary, Plaintiffs negotiated release terms that are narrowly tailored to release of wage claims only, and limited only to those wage claims related to the facts and claims pled in the Complaint. Plaintiffs also negotiated for the benefit of any member of the collective who participates in the settlement a limited release by Defendant of any potential claims against them arising out of their participation in the litigation or the settlement (for example, claims that an employee breached any arbitration, severance, or other agreement with Defendant by asserting such claims in this action), including Defendant's waiver of any recoupment or offset type claims, providing an additional benefit increasing the value of this settlement. Finally, to avoid unintended consequences, Plaintiffs negotiated an agreement that the parties explicitly agree to no collateral estoppel, claim splitting, res judicata, waiver, or other claim preclusion effect as to claims not

8

explicitly released that may otherwise have resulted from participation in this litigation and settlement.

5. <u>Counsel Believe This Is A Fair And Reasonable Settlement.</u>

The Parties, through their attorneys, voluntarily agreed to the terms of the settlement during arm's length, good-faith negotiations facilitated by this Court and continued by counsel after the Court's full-day settlement conference. All Parties were counseled and represented by their respective attorneys throughout the litigation and the settlement process. The Parties initially negotiated an agreement as to the Plaintiffs' attorney's fees and costs that was separate and apart from the settlement amount to be paid to the Plaintiffs, but as they became closer to a settlement, the Parties then negotiated an agreement that was based on a contingency percentage amount of fees, such that each dollar Plaintiff was able to obtain in settlement increased the payment amounts to Plaintiffs and counsel in direct correlation resulting in their interests being directly aligned. It is therefore the opinion of Plaintiffs' counsel and the plaintiff representatives that the settlement reached is a fair compromise of genuinely disputed claims, and it is respectfully submitted that resolution of this matter as proposed serves the best interests of both the Parties to this matter and the public.

**B. Payments To Named Plaintiffs In Exchange For A General Release Is Warranted.**

As previously stated, the settlement release terms for all collective members are narrowly tailored to the release of wage claims only, and are limited only to those wage claims related to the facts and claims pled in the Complaint, except that the Parties have agreed to an additional payment to the two Named Plaintiffs in exchange for their general release of claims, contingent on (and effective only upon) Court approval. *See e.g. Figueroa v. Coateb, Inc.*, No. 23-CV-61776-AUGUSTIN-BIRCH, 2024 U.S. Dist. LEXIS 45388, *4 (S.D. Fla. Mar. 14, 2024)

9

(Augustin-Birch, J.) *citing Vega v. Ya Guan USA LLC*, 2021 U.S. Dist. LEXIS 259398 (S.D. Fla. Aug. 24, 2021) ("A court may approve a general release if the plaintiff is given additional consideration for the release beyond what the plaintiff is entitled to under the FLSA.").

The general release payments in exchange for the two named Plaintiffs' release of any and all claims arising out of their employment with Defendant are reasonable because they were not extracted as a term of adhesion, without which the settlement would fail as to all collective members, but were instead negotiated to be effective contingent upon (and only upon) Court approval in exchange for separate and additional consideration. *See, e.g., Kidd v. Wawa, Inc.*, No. 5:23-cv-694-BJD-PRL, 2024 U.S. Dist. LEXIS 94524, at *4 (M.D. Fla. May 28, 2024). The "general release" is indeed limited to only claims arising out of the two named Plaintiffs' employment with Defendant, and as such is not a true "general" release. *Perez v. Havana's Cuban Cuisine, Inc.*, No. 0:24-CV-60101, 2024 U.S. Dist. LEXIS 134398, at *4 (S.D. Fla. July 30, 2024) (approving FLSA settlement with general release provisions "that relate to Plaintiff's employment with Defendants[…t]herefore, the mutual release clause is not a general release, and the Court concludes that the mutual release clause is fair and reasonable.") (Augustin-Birch, J.)

Additional factors supporting the general release provisions include that from March 2023 to September 2023, within applicable limitations periods on employment-related claims, named Plaintiff Keller worked a different job title separate from the FSE position at issue, for which named Plaintiff Keller offers to release claims related thereto that were not (and could not have been) included in the collective action claims alleging misclassification of the FSE position.[4]

---

[4] Plaintiffs disclose and acknowledge that Plaintiff Keller, outside of the context of this litigation and without negotiation by Plaintiff Keller's counsel, previously signed a severance agreement releasing claims. Approval of the general release in this settlement given by Plaintiff Keller, however, gives a release that is not subject to

That the general release for the two named Plaintiffs was negotiated by experienced counsel who recommend settlement approval as reasonable further warrants allowing the general release payments. As this Court recently held:

> A court may approve a general release if the plaintiff is given additional consideration for the release beyond what the plaintiff is entitled to under the FLSA. *Vega*, 2021 U.S. Dist. LEXIS 259398, 2021 WL 8946186, at *2.
>
> Here, Plaintiff is receiving additional consideration for the general release. DE 34-1 at 3. The Court also notes that the general releases bind each of the parties and that the parties have received the advice of experienced FLSA counsel. Under these circumstances, the Court concludes that the general release provisions are fair and reasonable.

*Mendes v. Endocrinology*, No. 0:24-CV-60324, 2024 U.S. Dist. LEXIS 127617, at *4 (S.D. Fla. July 19, 2024) (Augustin-Birch, J.).

### C. The Agreed Upon Payment Of Attorney's Fees Is Reasonable.

Under 29 U.S.C. § 216(b), an award of payment of Plaintiffs' attorney's fees and advanced costs is mandatory for prevailing plaintiffs in FLSA cases. The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). Plaintiffs achieve "prevailing party" status by obtaining a settlement of FLSA claims approved by Court order or entry of stipulated judgment. *See, e.g., Wolff v. Royal Am. Mgmt.*, 545 F. App'x 791, 793 (11th Cir. 2013) (FLSA plaintiff is a prevailing party upon obtaining a settlement enforced by court approval order or judgment as the functional equivalent of a "consent decree") (citing

---

certain enforcement challenges that may arise when an employee signs a private (not Court-approved) settlement agreement that was not negotiated by the employee's legal counsel.

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 603-604 (2001)). Here, Plaintiffs stand to recover a favorable settlement payment, and Plaintiffs' counsel's requested fees are reasonable and justified.

The percentage-of-the-fund method is the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share. *Nawaz v. Dade Med. Coll. Inc.*, No. 15-24129-CIV, 2017 U.S. Dist. LEXIS 140119, at *11 (S.D. Fla. Aug. 29, 2017) (approving fees paid from FLSA collective action settlement under common fund analysis, holding *Silva* does not limit fees to lodestar or mandate denial of fees higher than lodestar paid by percentage of the fund, but instead requires courts to analyze whether the request for the percentage of the common fund fee "is reasonable under the specific circumstances of this case.").

The agreed-upon amount of attorney's fees and costs to be paid from the total settlement fund is reasonable under the circumstances. First, the results justify the fees. Every plaintiff will receive a fair settlement distribution directly tied to their number of weeks worked as a FSE, and named Plaintiffs will receive an additional amount for their general release of all claims against Defendant contingent on Court approval.

Second, the risk justifies the fees. Plaintiffs' counsel took on this case with no assurance of payment, no way of knowing if the case would be certified as a collective action (and survive a decertification motion) or how many people would join if the case were certified, no way of knowing whether the court would dismiss the claims on summary judgment or the jury would rule in favor of Defendant, and, therefore, no guarantee of the potential value of the case or how long the case might have to be litigated before payment came (if it came at all).

Third, necessity justifies the fees. It is unlikely that any one of the Plaintiffs could reasonably afford to pay for lawyers by the hour to prosecute their FLSA claims. A contingent fee agreement was the most reasonable means by which they could secure representation by attorneys having Plaintiffs' counsel's experience, expertise, and abilities – and the Court can easily determine that this settlement could not have been accomplished at this stage, and on these favorable terms under these circumstances, if Plaintiffs had not been represented by counsel having a high level of experience, expertise and ability.

Fourth, that contingency fee representation of plaintiffs in FLSA wage and hour litigation is the standard in this legal market further supports the fee. Plaintiffs' counsel specialize in employee-side employment work and, as courts have routinely acknowledged, their one-third contingent fee is standard in the legal market for employee-side representation in wage and hour litigation. *Vasquez v. Scotts Co., LLC*, No. 17-60344-CIV-SMITH (S.D. Fla. May 24, 2021) (approving attorneys' fees equal to 33 1/3 of the settlement fund).

Finally, the work justifies the fee requested. Plaintiffs' counsel invested substantial time and effort in the case, all without any assurance of payment.

Although a lodestar cross-check is not required in the Eleventh Circuit,[5] Plaintiffs' counsel nonetheless submits that their lodestar is higher than the attorney's fees to be paid under the payment plan in the Settlement Agreement under counsel's regularly hourly rates of $650 per hour for C. Andrew Head (30 years of employment litigation practice) and $400 for Bethany Hilbert (over 20 years of employment litigation practice). *See, e.g., Heald v. Akumin Operating Corp.*, No. 24-CV-60648-LEIBOWITZ/AUGUSTIN-BIRCH, 2024 U.S. Dist. LEXIS 202235,

---

[5] *Millstein v. Holtz*, No. 21-CV-61179-RAR, 2022 U.S. Dist. LEXIS 233782, *40 (S.D. Fla. Dec. 30, 2022) ("Courts in this circuit may use the lodestar method as a cross-check of the percentage of the fund approach, although they are not required to do so.").

*5 (S.D. Fla. Nov. 6, 2024 (approving attorney's fees from FLSA settlement in amount less than the lodestar amount").). However, even if this Court were to conduct a lodestar review at reduced hourly rates of $400 for both counsel,[6] the lodestar is still higher than the fees to be paid to Plaintiffs' counsel under the settlement.

Plaintiffs' counsel have spent 163 hours working on this case.[7] See Ex. 1. The majority of that time was spent investigating the Plaintiffs' claims; drafting essential documents and filings such as the Complaint, proposed tolling agreement, statement of claim, and amended Complaint; working with Defendant's counsel to reach an agreement regarding the stipulation to conditionally certify the collective and send notice, including the agreed notice and consent forms to be sent; sending notice to the putative collective; communicating with the named and opt-in plaintiffs; reviewing documents produced by Defendant in preparation for the mediation and discussing those documents with the plaintiffs, calculating the potential damages, drafting Plaintiffs' mediation statement, and negotiating this settlement; and drafting the MOU and this Motion.

Plaintiffs' counsel has incurred expenses in litigating this case in the amount of $1,010.27. Those expenses include the Complaint filing fee, *pro hac vice* admission fees, service fees, mailing and copy costs for sending the notice to putative collective members and maintaining a notice website, and Lexis research costs.

It is therefore respectfully submitted that Plaintiffs' counsel fees as reflected in the Parties' compromise, paid as a percentage of the common fund, should be approved as reasonable.

---

[6] "For FLSA cases, courts within the Southern District typically find $400 per hour to be a reasonable hourly rate for attorneys with comparable experience as Plaintiff's counsel." *Perez v. Havana's Cuban Cuisine, Inc.*, No. 24-CV-60101-SMITH/AUGUSTIN-BIRCH, 2024 U.S. Dist. LEXIS 134398, *5 (S.D. Fla. July 30, 2024) (approving a $400 hourly rate).

[7] Plaintiffs' local counsel has also spent approximately fifteen (15) additional hours working on this case.

Dated: January 31, 2025

| | |
|---|---|
| C. Andrew Head (IL 6318974)* <br> Bethany Hilbert (IL 6280213)* <br> Head Law Firm, LLC <br> 4422 N. Ravenswood Ave. <br> Chicago, IL 60640 <br> Tel: (404) 924-4151 <br> Fax: (404) 796-7338 <br> Email: ahead@headlawfirm.com <br>         bhilbert@headlawfirm.com <br><br> *s/ Andrew R. Frisch* <br> Andrew R. Frisch <br> Morgan & Morgan <br> 8151 Peters Rd, Suite 4000 <br> Plantation, FL 33324 <br><br> *admitted *pro hac vice* <br><br> *Attorneys for Plaintiffs and the Collective* | */s/ Cathy M. Stutin* <br> Cathy M. Stutin <br> Fla. Bar No. 865011 <br> Fisher & Phillips LLP <br> 201 East Las Olas Boulevard <br> Suite 1700 <br> Fort Lauderdale, Florida 33301 <br> T: (954) 525-4800 <br> F: (954) 525-8739 <br> E: cstutin@fisherphillips.com <br><br> *Attorneys for Defendant* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 31, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sends notification of such filing to all counsel of record.

By: */s/ Cathy M. Stutin*